UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAUL GARCIA-RYAN,

                          Plaintiff,

             v.                                              24-CV-7117 (RA)

COMMUNITY HEALTH PROJECT, INC. d/b/a                         OPINION & ORDER
CALLEN-LORDE COMMUNITY HEALTH
CENTER,

                          Defendant.

RONNIE ABRAMS, United States District Judge:

Plaintiff Paul Garcia-Ryan brings this lawsuit against Defendant Community Health

Project, Inc., d/b/a Callen-Lorde Community Health Center (the "Health Center"), a federally

funded community health center in New York, arising from services he received to treat gender

dysphoria. In providing those services, Garcia-Ryan alleges that the Health Center violated the

Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116(a), by engaging in a

deliberate and systemic pattern of discrimination on the basis of sexual orientation, resulting in

him being subjected to discriminatory healthcare treatment.

The United States of America (the "Government") first moves to substitute itself as

Defendant for the Health Center. Garcia-Ryan does not contest that the Health Center is a federally

funded community health center, or that his cause of action arises from medical services provided

by the Health Center. Under the Public Health Service Act ("PHSA"), federally funded community

health centers such as the Health Center and their employees may be deemed employees of the

United States Public Health Service ("PHS") for purposes of tort liability. 42 U.S.C. § 233. As a

result, Garcia-Ryan's only remedy for the harms he alleges in his Complaint is against the

Government—not the Health Center—pursuant to the Federal Tort Claims Act, 28 U.S.C.

§§ 1346(b), 2671–2680 (the "FTCA").

Upon substitution, the Government further moves to dismiss the Complaint for lack of subject matter jurisdiction since the FTCA requires claimants, as a condition of the Government's waiver of sovereign immunity, to first exhaust administrative remedies before commencing an action in federal court. Garcia-Ryan, however, brought this action without first filing the requisite administrative claim. Since this requirement is jurisdictional and cannot be waived, the Complaint against the United States must be dismissed in its entirety, albeit without prejudice to refile an FTCA claim.

## BACKGROUND

The following facts are derived from Garcia-Ryan's Complaint, Dkt. No. 1 ("Compl."), and are assumed to be true for purposes of this motion. *See Mason v. Klein*, 2022 WL 2441142, at *1–2 (S.D.N.Y. July 5, 2022).

Between 2014 and 2022, Garcia-Ryan, who had been taking hormones since 2010, sought treatment at the Health Center for gender dysphoria and was ultimately approved for surgery to remove his testicles and invert his penis. Compl. ¶¶ 31–32, 41. He now contends that the Health Center staff failed to take a sufficient medical history and conduct a proper differential diagnosis. *Id.* ¶¶ 33–43. Had they done so, he claims, it would have revealed that what he was actually experiencing was not gender dysphoria, but rather "internalized homophobia," which he believes "can mimic gender dysphoria," and is especially prevalent among "gays and lesbians, because they are often gender non-conforming." *Id.* ¶¶ 30, 33–36, 44–46, 53. Garcia-Ryan characterizes the Health Center's failure to conduct a thorough health assessment and its decision to offer him gender-affirming care, including "castration," in the absence of a formal diagnosis, as evidence of a discriminatory political agenda and alleges that it "reinforced [his] internalized homophobia and assumed that he was transgender . . . thereby neutraliz[ing] his sexuality and sexual orientation."

Compl. ¶¶ 30, 46, 51, 53.

Garcia-Ryan asserts a single cause of action under Section 18116 of the ACA, which applies to any health program or activity that receives federal funds and prohibits discrimination on any of the grounds specified in Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1982, the Age Discrimination Act of 1975, and the Rehabilitation Act of 1973. *See* 42 U.S.C. § 18116(a). He alleges that the Health Center subjected him to discrimination on the basis of his sexual orientation, *see* Compl. ¶¶ 57–79, and seeks compensatory damages and attorney's fees and costs. *See* Compl. ¶¶ 17, 79; p. 16.

The Health Center responded by filing an Answer, denying some of the allegations and sufficient knowledge or information with respect to the others, with the exception of admitting that it had rendered "professional services" to Garcia-Ryan. Dkt. No. 10 ("Answer)" ¶¶ 1–30. The Government then confirmed that the Health Center had been deemed an employee of the PHS with respect to the challenged conduct, Dkt. No. 20 ("Deeming Letter"), and moved to substitute itself as the proper defendant. Dkt. No. 24 ("Mot. to Dismiss"). It also moved, upon substitution, to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), asserting that the FTCA serves as Garcia-Ryan's exclusive remedy, and since he had failed to exhaust his available administrative remedies under the FTCA, this Court lacks subject matter jurisdiction over any such claim. *Id.* The Court agrees and grants the Government's motion to substitute and dismiss.

## LEGAL STANDARD

### I.  Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings. A plaintiff asserting subject matter jurisdiction has

3

the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).[1]

## II.     Statutory and Regulatory Frameworks

Under the PHSA, the remedies provided under the FTCA are the exclusive means for resolving tort complaints against PHS employees acting within the scope of their employment. *Egypt v. Inst. for Fam. Health*, 2023 WL 3977496 at *3 (S.D.N.Y. June 12, 2023). Section 233(a) provides:

> The remedy against the United States provided by [the FTCA] . . . for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

42 U.S.C. § 233(a).

The Federally Supported Health Centers Assistance Act ("FSHCAA") amended the PHSA to "extend FTCA coverage to certain health centers that receive federal funding under Section 330 of the PHSA, 42 U.S.C. § 254(b), by authorizing the Department of Health and Human Services to deem them employees of the Public Health Service." *Egypt*, 2023 WL 3977496 at *3 (citing 42 U.S.C. § 233(g)–(n)). The Secretary of HHS can deem a health center and affiliated individuals employees of the PHS "both generally and for purposes of a specific lawsuit." *Carlan v. Fenway Cmty. Health Ctr., Inc.*, 2025 WL 1000478, at *4 (D. Mass, Mar. 28, 2025). Once this occurs, the United States is substituted as the defendant, and the only way a suit can proceed is pursuant to the FTCA.

Before a federal court can "entertain a claim under the FTCA against the United States of America," however, a plaintiff "must comply with the FTCA's procedural requirements."

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, omissions, and alterations.

*Gonzalez v. Ryan Health NENA*, 2025 WL 2371181, at *5 (S.D.N.Y. Aug. 5, 2011). A claimant must first "exhaust h[is] administrative remedies by filing a claim for damages with the appropriate federal government entity," and must then "receive a final written determination from that entity." *Id.* (citing 28 U.S.C. § 2675(a)). The filing of such an administrative claim is part of Section 2675(a)'s "jurisdictional presentment requirement." *Collins v. United States*, 996 F.3d 102, 109 (2d Cir. 2021). Barring administrative exhaustion, a federal court lacks subject matter jurisdiction over a plaintiff's claims under the FTCA.

## DISCUSSION

### I.    Motion to Substitute

The Government first contends that it should be substituted as a defendant in place of the Health Center. The Court agrees. As explained above, Section 233(a) immunizes health centers deemed officers and employees of the PHS from personal liability "for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions while acting within the scope of their employment." 42 U.S.C. § 233(a), (g).

The period of relevant conduct began in November 2014, when Garcia-Ryan alleges that he visited the Health Center for the first time, and continued through October 2022. *See* Compl. ¶ 31. In early 2025, the Acting United States Attorney for the Southern District of New York, Matthew Podolsky, issued a letter and certification confirming that the Health Center was deemed an employee of the PHS with respect to the conduct alleged in the Complaint. *See* Deeming Letter; Dkt. No. 25 ("Def. Br."), Ex. 1 ("Certification"); Dkt. No. 26 ("Meyer Decl."), Ex. 1 ("Notice of Deeming Action"). The Court thus concludes—and Garcia-Ryan does not dispute—that the Health Center was properly deemed an employee of the PHS, and that it, along with its employees, were acting within the scope of its federal employment when they provided health related services with respect to the alleged events.

Once deemed an employee of the PHS, Section 233(a) provides that a claimant's only available remedy is under the FTCA. Garcia-Ryan disputes this, arguing that since he brought his claim under the ACA's anti-discrimination provision and not as a tort, it is not the kind foreclosed by Section 233(a). The Court disagrees. Although it is true he filed the claim under Section 18116(a), it can "appropriately be considered a claim arising from a personal injury resulting from [the Health Center's] performance of medical or related functions within the scope of their employment," *Carlan*, 2025 WL 1000478, at *6, and is in fact precisely the type of claim that Section 233(a) forecloses.

As was the case in *Carlan v. Fenway Community Health Center, Inc.*, "[t]he central question is whether Section 233 applies to encompass claims brought under Section 18116 of the ACA. If it does, then [defendant] is immune, and [plaintiff's] exclusive remedy is to seek an action against the United States under the FTCA." *Id.* at *5. Section 18116 of the ACA "prohibits any health organization that receives federal financial assistance from discriminating against an individual on a ground prohibited by" federal civil rights law. *Id.* at *4 (citing 42 U.S.C. § 18116(a)). Specifically, it provides:

> Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 794 of Title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under such title VI, title IX, section 794, or such Age Discrimination Act shall apply for purposes of violations of this subsection.

42 U.S.C. § 18116(a). The Supreme Court has interpreted Title IX to prohibit discrimination on the basis of sexual orientation, gender identity, or transgender status, *Bostock v. Clayton Cnty.,*

*Ga.*, 590 U.S. 644 (2020), and it is upon this basis that Garcia-Ryan asserts he was discriminated. He maintains that his claim does not arise out of the negligent performance of medical functions within the scope of the Health Center's duties as a deemed employee of the PHS. Instead, in urging that Section 18116 is the proper vehicle for his dispute, he draws a line between discrimination and negligence claims, stating that: "Medical treatment that is negligent and medical treatment that is imbued with deliberate indifference toward a relevant protected characteristic should not be confused." Dkt. No. 36 ("Sec. Am. Opp.") at 9–10. Given this core difference, he asserts that although Section 233(a) precludes claims sounding in negligence, it does not reach those such as this one brought as a discrimination claim.

Courts, however, have not been so formalistic. Rather than limiting Section 233(a)'s coverage to negligence claims, they instead ask whether the suit "sound[s] in medical malpractice." *Mendez v. Belton*, 739 F.2d 15, 19 (1st Cir. 1984); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 108 (2d Cir. 2000). In *Cuoco v. Moritsugu*, for instance, the Second Circuit held that Section 233(a) precluded a *Bivens* claim against PHS personnel, squarely rejecting the plaintiff's assertion that "§ 233(a) provides immunity only from medical malpractice claims." In so doing, it stated "there is nothing in the language of § 233(a) to support [plaintiff's] conclusion," while further noting that when Congress "has sought to limit immunity to medical malpractice claims it has done so explicitly." *Id.*

Subsequently, in *Hui v. Castaneda*, the Supreme Court granted certiorari to resolve a conflict between the Second Circuit's decision in *Cuoco*, and the Ninth Circuit's decision in *Castaneda v. United States*, which had affirmed the district court's ruling that Section 233 did not preclude a *Bivens* claim because the FTCA did not supply an equally effective remedy. 559 U.S. 799, 804 (2010) (citing *Castaneda v. United States*, 546 F.3d 682 (9th Cir. 2008), *rev'd*, 559 U.S.

7

799 (2010)). In extending Section 233(a) immunity to *Bivens* claims, and thereby reversing the Ninth Circuit, the Court focused on the statutory language that establishes the FTCA as the sole remedy "exclusive of any other civil action." It characterized Section 233(a) as so "broad," it could "easily accommodate[] both known and unknown causes of action," despite the fact that the provision predated the Court's decision in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). *Id.* at 806 (citing 42 U.S.C. § 233(a)).

Garcia-Ryan takes issue with the Government's reliance on *Hui*, arguing that a *Bivens* action is fundamentally different from an action arising under a federal statute, like Section 18116, which "expressly authorizes legal action against a set of entities that also includes sovereign entities." Sec. Am. Opp. at 15. He asserts that "applying immunity," in this context, "would negate Congress' intent to authorize a cause of action . . . [which] is discerned from the clear language of the statute itself." *Id.* Not so. There is no indication, however, that Congress intended to exempt civil statutory actions from immunity under Section 233(a). Indeed, beyond *Bivens* and 42 U.S.C. § 1983 actions, courts have also held that Section 233(a) precludes claims brought pursuant to the Americans with Disabilities Act, the Civil Rights Act of 1964, and Section 18116 of the ACA. *See Pinzon v. Mendocino Coast Clinics Inc.*, 2015 WL 4967257, at *3 (N.D. Cal. Aug. 20, 2015) (ADA and Civil Rights Act of 1964); *Carlan*, 2025 WL 1000478, at *9 (Section 18116 of the ACA). Each of these statutory causes of actions constitutes the type of "civil action" contemplated by Section 233(a).

Finding Garcia-Ryan's arguments unpersuasive in light of what appears to be the growing consensus, the Court turns to the question of whether Section 233(a) precludes his claim brought under Section 18116. His grievances focus on the Health Center's alleged failure to exercise proper medical judgment by diagnosing him with gender dysphoria, providing "access to hormone

therapy," and approving various invasive procedures including "the removal of his testicles and the inversion of his penis, without performing a readiness assessment." Compl. ¶¶ 35, 40–41. As was the case in *Carlan*, "[s]uch claims certainly involve the medical and/or medically related functions of providing treatment and ensuring that [the Health Center] follows generally accepted clinical guidelines." *Id.* at *6. Despite Garcia-Ryan's insistence that there is a meaningful difference between medical negligence and "a knowing act of discrimination," Sec. Am. Opp. at 2, 9–11, courts have held that, "there is nothing in the FSHCAA which limits the defendants' liability to actions in negligence only." *Carlan*, 2025 WL 1000478, at *7 (collecting cases).

Garcia-Ryan next makes several attempts to narrow the scope of the immunity provided by Section 233(a), which the Court finds equally unpersuasive. He relies on the doctrine of *generalia specialibus non derogant*, which stands for the proposition that the specific trumps the general. Sec. Am. Opp. at 11–12 ("[T]he general does not derogate from the specific or the general/specific canon."). He claims that Section 233(a) is a more general law than Section 18116 "because it encompasses the entire class of personal injury actions arising from a wide range of medical and related functions of a narrow class of persons." *Id.* at 11. Section 18116, he says, "by contrast . . . is a specific statute that focuses solely on discriminatory acts or omissions that are committed in the course of any health activity by the broad class of any recipient of Federal funding." *Id.* As a result, he maintains that Section 233(a) "must yield to the specific statute . . . involving the same subject, regardless of whether it was passed prior to the general statute." *Id.*

The Court disagrees, finding persuasive the *Carlan* court's conclusion that the plaintiff's argument that "Section 233 is actually a more general law that encompasses a wide range of medical actions and only Section 18116 covers discrimination claims," conflicted "with [plaintiff's] arguments that Section 233 should be narrowly read, that the two statutes are directly

9

in conflict, and that the two statutes are unrelated." 2025 WL 1000478, at *9. Moreover, to the extent the Court entertains Garcia-Ryan's *generalia specialibus non derogant* argument, Section 18116 can easily be read as the general statute, while Section 233(a) can operate as a specific carveout to its waiver of sovereign immunity, providing immunity to a class of defendants for the subset of claims that arise out of medical negligence. He cites several out of circuit cases, which he claims support the notion that "[c]ourts have repeatedly refused to permit the FTCA to supplant more specific statutes." *Id.* at 12–13 (collecting cases). On closer look, however, these cases deal with comprehensive statutory disability compensation schemes, which provided sufficient coverage to certain plaintiffs, and hold that recovery under the FTCA (on top of recovery under the compensation statute) is excessive and that "where there is a compensation statute that reasonably and fairly covers a particular group of workers, it presumably is the exclusive remedy to protect that group." *Alexander v. United States*, 500 F.2d 1, 2–3 (8th Cir. 1974); *see also Premachandra v. United States*, 739 F.2d 392, 393 (8th Cir. 1984) (same). They do not, however, stand for the proposition that a more specific statute governs over a more general one in the context of the FTCA, Section 18116, or Section 233.

Garcia-Ryan further asserts that the conditional funding provision of statutes enacted pursuant to Congress's Spending Clause authority, such as Section 18116, serves to waive immunity under the Eleventh Amendment. Sec. Am. Opp. at 18. He relies primarily on a Fourth Circuit decision, *Kadel v. North Carolina State Health Plan Teachers & State Employees*, which held that a North Carolina self-funded state health care plan did not enjoy sovereign immunity under the Eleventh Amendment with respect to allegations that the health plan had discriminated against plaintiffs by excluding gender-confirming health services under Section 18816. 12 F.4th 422, 428 (4th Cir. 2021). This decision, however, is inapposite to the case at bar. First, the Health

10

Center is not a state actor seeking immunity under the cover of the Eleventh Amendment, or a private entity as Garcia-Ryan intimates. Sec. Am. Opp. at 18. Rather, it is, for purposes of this suit, a federal employee. Second, even if the defendant in *Kadel* had been the federal government, the claim did not sound in medical malpractice, but rather, fell squarely in the bucket of standard discrimination claims anticipated by Section 18116.

Thus, despite Garcia-Ryan's arguments to the contrary, "Section 233 does not defeat the congressional intent of the ACA; it simply immunizes a PHS employee from a suit that seeks a remedy for the types of injuries that [plaintiff] suffered." *Carlan*, 2025 WL 100478, at *9. Given the breadth of claims that have been found to fall under Section 233(a)'s purview, including Section 18116 claims, the Court concludes that Section 233(a) precludes Garcia-Ryan's claim here.

Accordingly, the Government is substituted as Defendant.

## II.     Motion to Dismiss for Lack of Subject Matter Jurisdiction

The Government next argues that "upon substitution, the Court should dismiss the Complaint against it for lack of subject matter jurisdiction." Def. Br. at 2. The Court agrees and for the reasons that follow, grants the Government's motion.

It is well settled that the "United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980). The FTCA "constitutes a limited waiver by the United States of its sovereign immunity," and thereby "allows for a tort suit against the United States under specified circumstances." *D.J.C.V. v. United States*, 605 F. Supp. 3d 571, 587 (S.D.N.Y. 2022). A plaintiff must comply with the FTCA's procedural requirements before a federal court can entertain his claim. *Egypt*, 2023 WL 3977496, at *3. This

consists of filing a claim for damages with the appropriate federal government entity and receiving a final written determination. *See* 28 U.S.C. § 2675(a). "A claimant may thereafter challenge the Government's final denial in a federal district court by filing an action within six months after the date of the mailing of the notice of final denial by the federal entity." *Egypt*, 2023 WL 3977496, at *3 (citing 28 U.S.C. § 2675(a)).

Garcia-Ryan alleges no facts demonstrating that he filed an administrative claim for damages under the FTCA with the relevant federal government entity and subsequently received a final written determination before bringing this action. Because he has not alleged that he has complied with the FTCA's jurisdictional prerequisite, the Court lacks subject matter jurisdiction over his claim. Accordingly, Garcia-Ryan's claim against the Government is not permissible under the FTCA and must be dismissed.

### CONCLUSION

For the reasons explained above, the Court grants the Government's motion to substitute, and having substituted it for the Health Center, dismisses the claim asserted against it, and its employees, for lack of subject matter jurisdiction, albeit without prejudice. Garcia-Ryan is granted leave to refile his Complaint against the United States pursuant to the FTCA. If he fails to do so within thirty (30) days, the case will be dismissed. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. No. 24.

SO ORDERED.

Dated:          February 24, 2026
                New York, New York

_____
Ronnie Abrams
United States District Judge

12